IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN MORGAN,

                Plaintiff,                CV-07-1789-ST

      v.                            FINDINGS AND
                                        RECOMMENDATION

MICHAEL ASTRUE, Commissioner,
Social Security Administration,

                 Defendant.

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Steven Morgan ("Morgan"), seeks judicial review of the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

("the Act"), 28 USC §§ 401-34, 1381-1383f.  This court has jurisdiction under 42 USC

§§ 405(g) and 421(d).  For the resons that follow, the Commissioner's decision should be

REVERSED, and this case should be remanded for a determination of benefits.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Morgan was born in 1966 and age 40 at the time of the ALJ's decision.  Tr. 147, 221.[1]

He has a tenth-grade education, as well as a General Equivalency Degree, and is insured for SSI

benefits through December 31, 2009.  Tr. 34, 221.  Morgan maintained gainful employment for

much of his adult life, working a variety of skilled jobs in construction, carpentry, and

maintenance, and semiskilled jobs as a meat boner and oil lube technician.  Tr. 86, 91, 245-46.

Morgan alleges that his disability began on December 15, 2004, due to the combined

effects of a Human Immunodeficiency Virus ("HIV") infection, acquired immunodeficiency

syndrome ("AIDS"), and chronic obstructive pulmonary disease ("COPD").  Tr. 70, 72, 85, 213.

## PROCEDURAL HISTORY

Morgan applied for DIB and SSI on August 30, 2005.  Tr. 70-72.  His applications were

denied initially and upon reconsideration.  Tr. 32-52.  Morgan requested a hearing before an ALJ

which was held on January 9, 2007.  Tr. 217-49.  The Administrative Law Judge ("ALJ") issued

his decision on February 8, 2007, finding Morgan not disabled.  Tr.  20-31.  Morgan timely

appealed the ALJ's decision to the Appeals Council which denied his request for review, making

the ALJ's decision the final decision of the Commissioner.  Tr. 4-6; 20 CFR § 404.981.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of no less than 12

months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to

---

[1]  Citations to "Tr." are to the Administrative Record filed March 24, 2008 (docket #13).

establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*,

517 US 1122 (1996) (citations omitted).  The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520,

416.920.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*,

180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial

gainful activity.  20 CFR §§ 404.1520(b), 416.920(b).  If so, then the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has "a severe medically

determinable physical or mental impairment."  20 CFR §§ 404.1520(c), 416.920(c).  If not, then

the claimant is not disabled.

At step three, the Commissioner determines whether the severe impairment "meets or

equals" one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of

Impairments").  20 CFR §§ 404.1520(d),  416.920(d).  If so, then the claimant is disabled.

If the analysis proceeds beyond step three, the Commissioner must determine the

claimant's residual functional capacity ("RFC").  The RFC is an assessment of work-related

activities the claimant can perform on a regular and continuing basis, despite the limitations

imposed by his impairments.  20 CFR §§ 404.1545(a), 416.920(e), 416.945; Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Using the RFC, the Commissioner

determines at step four whether the claimant can perform past relevant work.   20 CFR

§§ 404.1520(e), 416.920(e).  If so, then the claimant is not disabled.

Finally, at step five, the Commissioner determines whether the claimant is able to perform other work in the national economy.  20 CFR §§ 404.1520(f), 404.1566, 416.920(f).  If not, then the claimant is disabled.

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## ALJ'S FINDINGS

At steps one and two, the ALJ found that Morgan suffered from the medically determinable severe impairments of HIV infection and COPD.  Tr. 25.  However, the ALJ found that these impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart B, Regulation No. 4 ("Listing of Impairments").  Tr. 26.

The ALJ then found that Morgan retained an RFC that physically limited him to light work with the ability to:  (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand, walk, and sit for about six hours each in an eight hour work day.  Tr. 26-27.  The ALJ found no postural, manipulative, or visual limitations, but determined that Morgan should "avoid concentrated exposure to hazards and pulmonary irritants (*i.e.* dusts, fumes, *etc.*)"  Tr. 27.  Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Morgan's RFC precluded him from returning to his past relevant work.  Tr. 29.

At step five, the ALJ found that a significant number of jobs existed in the national economy that Morgan could perform, including positions as a cashier, small products assembler, and motel cleaner.  Tr. 30.  Therefore, the ALJ determined that Morgan was not disabled at any time through the date of his decision.  *Id.*

## CLAIMANT'S ARGUMENTS

Morgan argues that the ALJ improperly rejected his testimony, the testimony of his mother, and the opinion of his treating doctor concerning the effects of his fatigue.[2]  Based on those evidentiary errors, Morgan contends that the ALJ improperly failed to include further limitations into his RFC and erred at step five.  As discussed below, this court finds that the ALJ erred by disregarding the evidence cited by Morgan.  That evidence, properly credited, mandates a finding of disability.

## FINDINGS

### I.  Rejection of Testimony

Morgan asserts that the ALJ improperly rejected testimony from him, his mother, and his treating doctor establishing additional limitations.  If accepted, this evidence establishes that Morgan's fatigue limits him to part-time work and would cause him to miss more than two days of work per month even if performing only simple, routine and sedentary work.

### A.  Lay Witness Testimony

#### 1.  Legal Standard

Once a claimant shows an underlying impairment which may "'reasonably be expected to produce the pain or other symptoms alleged,'" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1036 (9th Cir 2007), quoting *Bunnell v. Sullivan*, 947 F2d 341, 344 (9th Cir 1991) (*en banc*) and *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

---

[2] Morgan makes several other arguments that this court need not and does not address.

claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell*, 947 F2d at 344. The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

Similarly, friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F3d 915, 918 (9th Cir 1993). Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

### 2. Testimony of Morgan and his Mother

Morgan was diagnosed with AIDS in the fall of 1995, but "felt pretty good" until about 2002. Tr. 222. In 2002, he lost his job and health insurance and went off medications. Tr. 223, 226. He moved into his mother's home in about 2003. Tr. 226. His brother and a good friend got him a job working intermittently on their crew in a construction business that remodeled Fred Meyer stores. Tr. 223-24. They did the heavy work, allowed Morgan to take breaks when he became tired, and would "cover with the boss" for him. Tr. 223. In December 2004, Morgan's brother and friend left the company. Tr. 224. Morgan was unable to continue working after they left because he would have been put on a different crew with other people who would not give him the "easy work." *Id.*

6 - FINDINGS AND RECOMMENDATION

Morgan testified that he is plagued with fatigue and shortness of breath.  He sleeps about

12 hours a night and takes a daily afternoon nap for two or three hours.  Tr. 227, 233, 237.  In the

evenings, he is up at most for four or five hours.  Tr. 234.

Fatigue also precludes Morgan from doing other activities he used to enjoy, including

hiking, bowling, and golfing.  Tr. 228, 236, 239.  Morgan belongs to a Moose Lodge which is

about 15 blocks from his home where he goes several times a week to socialize.  Tr. 228-29.

Morgan usually does not walk to the Lodge, but if he does, he walks only one direction and

someone drives him the other direction in a car.  Tr. 243.  Moreover, he sometimes is able to stay

only an hour or so and then must return home due to fatigue.  Tr. 237.

Morgan lives with his mother, whose home is on a "regular size" city lot which Morgan

periodically mows.  Tr. 229.  He used to be able to mow the yard without stopping, but now must

mow it in two half-hour sessions, taking a break for a couple of hours after mowing the first half.

Tr. 229, 239.  His other activities include only minimal, low exertion household activities such

as making his meals, vacuuming, doing his laundry, and operating the dishwasher.  Tr. 233, 239.

Morgan's stamina is to some degree dependent on how much he exerts himself.  Tr. 229, 236

(used to mow entire yard at once, but now mows in two sessions with a nap in between), 231-32

(could maybe lift eight pounds (a gallon of milk) for five or six hours out of a day for one or two

days, but not every day of the week).

### a.  **Morgan's Testimony**

Although the ALJ found that Morgan's HIV infection and COPD were likely to cause

some limitations, the ALJ rejected Morgan's testimony, finding "inconsistencies in the record

and lack of objective medical evidence," and noting that the "totality of the medical records

reveals claimant is able to engage in basic work activities despite the limitations resulting from his impairments." Tr. 27.  In explaining that conclusion, the ALJ cited treatment notes from February 2006 that Morgan "was doing well and was overall feeling better," his failure to stop smoking, his daily household and social activities, his hiking trip in August 2005, evidence that he "stopped working for reasons not related to the allegedly disabling impairment," and his receipt of unemployment compensation during a period of time he alleges disability.  Tr. 27-28, 182.

There is no evidence in the record that Morgan is malingering, and the ALJ acknowledges that Morgan's HIV infection and COPD are likely to cause some limitations.  Tr. 27.  Thus, the ALJ was required to provide clear and convincing reasons for rejecting Morgan's testimony regarding his subjective symptoms and their disabling effects.

While Morgan reportedly stated to his treating doctor, James Leggett, M.D., that he was "feeling better" in February 2006 (Tr. 182), that statement compared Morgan's condition on the date of that examination with his condition six months earlier when he had stopped taking his HIV medications and was hospitalized for pneumonia.  A single chart note indicating that Morgan was improving with the help of medications does not undermine his fatigue testimony.  To the contrary, as discussed below, Dr. Leggett cast no aspersions on Morgan's reports of fatigue and found that his fatigue would limit him to only part-time work.

The ALJ also stated that Morgan performed a variety of household tasks as a basis to disregard his testimony about fatigue.  However, courts have repeatedly cautioned that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F3d 715, 722 (9th Cir 1998) (citing cases).  There is

simply nothing inconsistent between the minimal daily household activities reported by Morgan

and his mother and their testimony regarding his fatigue.  In particular, the ALJ noted that

Morgan had gone hiking on one occasion in August 2005.  However, the ALJ embellished on the

actual language in the chart note about Morgan's hiking, contending that he was in the

"mountains," when the medical record says that he was "out in the country."  Tr. 28, 161.

Furthermore, this hike preceded his hospitalization in August 2005, and nothing in the record

indicates that the activities of that hike are inconsistent with his testimony of fatigue.

Morgan did stop working, but for reasons related to his fatigue.  The thrust of Morgan's

disability claim is not that he is completely incapable of performing any gainful activity.  With

the accommodation of his brother and a friend, he continued to work intermittently through

December 2004, but could not continue when they were no longer there to do work that he could

not perform.  At best, that job was a form of family or friend sponsored "sheltered" employment

which Morgan could not perform without the help of others.  Thus, the ALJ's conclusion that

Morgan "stopped working for reasons not related" to his impairment is not supported by the

record.  Tr. 28.

Nor is Morgan's receipt of unemployment benefits inconsistent with his request for

disability benefits.  Social Security regulations require a claimant to apply for all other benefits

to which he or she may be eligible, including unemployment insurance benefits.  20 CFR

§ 416.210(a), (b).  Oregon law permits receipt of unemployment insurance benefits if an

individual actively seeks the type of work he or she is "most capable of performing" and

"remains available for some work," which includes "temporary and part-time opportunities."

ORS 657.155(1)(c); OAR 471-030-0036.  The medical record in this case indicates that Morgan

9 - FINDINGS AND RECOMMENDATION

continued looking for work, and Morgan does not deny that he is capable of some work. Instead, the issue is the limiting affects of his fatigue on his ability to work full time.

The Commissioner also argues that Morgan failed to provide a doctor's certification that his impairments required him to sleep to the extent he claims. However, that argument would turn the evaluation of a claimant's subjective symptoms on its head.

In sum, the ALJ failed to provide clear and convincing reasons to reject Morgan's testimony regarding the fatigue he experiences.

### b. Mrs. Morgan's Testimony

The ALJ found Mrs. Morgan's testimony "credible to the extent she has accurately reported what she has seen, what has been exhibited to her, and what she has been told," but concluded that she relied too heavily on Morgan's reported symptoms ("behavior exhibited or symptoms reported by a subject are not an adequate basis to establish disability"), that she did not have the "demonstrated vocational expertise necessary to support a conclusion the claimant is unable to work," and that her written statements and oral testimony were "inconsistent with the claimant's alleged limitations." Tr. 28.

As just discussed, the ALJ provided no legitimate basis for rejecting Morgan's testimony concerning his fatigue. Thus, his bootstrap rejection of Mrs. Morgan's testimony on the ground that it was premised on Morgan's exhibited behavior or reported symptoms is improper. *Dodrill*, 12 F3d at 918-19 (dismissal of lay witness testimony on ground that it repeated claimant's complaints improper).

Her lack of "vocational expertise" is also irrelevant because the issue is not whether the ALJ must credit her opinion about whether or not Morgan can work, but whether the ALJ must

10 - FINDINGS AND RECOMMENDATION

credit her testimony as to the limiting effects of Morgan's symptoms.  Here, the critical issue is whether testimony about the existence and limiting effects of Morgan's fatigue must be credited, not whether any observed limitations translate into a conclusion that Morgan cannot work.

This leaves only the ALJ's assertion that Mrs. Morgan's written statements and oral testimony are inconsistent with Morgan's alleged limitations.  In particular, the ALJ focused on evidence that Morgan "does normal daily living," "goes out for coffee and visits with friends," and performs a variety of household tasks, including preparing meals, taking out garbage, washing dishes, and caring for a cat.  Tr. 28.  However, nothing about these types of activities are inconsistent with the evidence in the record concerning Morgan's fatigue.  Mrs. Morgan testified that Morgan spends 12 hours in bed every night and naps every afternoon (Tr. 236-37), tires within a few hours from being up (Tr. 237), spends only up to three hours (and sometimes less than an hour) at the Lodge (*id*), and is unable to do many activities he used to enjoy, including bowling and hiking (Tr. 239).  Nothing in the record supports the conclusion that Morgan performs his rather minimal daily activities for more than four to five hours per day. Instead, Morgan's most physical activity is mowing the yard, which he can no longer do in one session, and a few hours of physical activity "puts him totally down for two or three days."  Tr. 238.

 Morgan and his mother were forthright about his household and social activities.  However, nothing in their testimony is inconsistent with the evidence that Morgan performs those activities within the windows of time when he is not relegated to his bed due to his fatigue.

Thus, the ALJ's reasons for rejecting Mrs. Morgan's testimony are not supported by the record.

11 - FINDINGS AND RECOMMENDATION

///

### B.  Treating Doctor

#### 1.  Legal Standard

"The opinions of treating doctors should be given more weight than the opinions of

doctors who do not treat the claimant."  *Reddick*, 157 F3d at 725, citing *Lester v. Chater*, 81 F3d

821, 830 (9th Cir 1995).  This is "[b]ecause treating physicians are employed to cure and thus

have a greater opportunity to know and observe the patient as an individual . . . ."  *Smolen v.

Chater*, 80 F3d 1273, 1285 (9th Cir 1996) (citations omitted).  Where the opinion of a treating

physician is uncontradicted and consistent with the evidence in the record, it is controlling and

may be rejected only for "clear and convincing" reasons supported by substantial evidence in the

record.  *Lester*, 81 F3d at 830, quoting *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991).  If

it is contradicted, the ALJ must still give it weight unless he provides specific and legitimate

reasons for rejecting the opinion.  *Id*; 20 CFR §§ 404.1527(d)(2), 416.927(d)(2).  To do this, the

ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical

evidence, stat[e] his interpretation thereof, and mak[e] findings."  *Thomas v. Barnhart*, 278 F3d

947, 957 (9th Cir 2002) (quotations and citation omitted).

#### 2.  Dr. Leggett's Opinions

In August 2005, Morgan was hospitalized with pneumonia.  Tr. 161-62, 224-26.  At that

time, Dr. Leggett became Morgan's treating doctor.  Dr. Leggett referred Morgan to the

Pulmonary Division of the Oregon Clinic for pulmonary function testing.  Following testing on

December 8, 2006, James R. Patterson, M.D., F.C.C.P. (Fellow of the College of Chest

Physicians), found "[s]evere to very severe obstructive lung disease" with an $FEV_1/FVC$ ratio of

"just 43%,"[3] and "remarkable hyperinflation" based on lung volumes.  Tr. 213.

On December 17, 2006, Dr. Leggett completed a form for Morgan's attorney stating that,

due to the effects of his fatigue, Morgan was limited to working only four to five hours per day

and would miss more than two days of work per month even if only performing a simple, routine

and sedentary job.  Tr. 209-12.  He added a note that he was "not an occupational physician" and

that because he did not test Morgan "for any of these questions," his "responses are hypotheses."

Tr. 211.  Latching onto this note, the ALJ gave Dr. Leggett's opinions "very little weight

because there is no evidence by way of test results or objective findings to support" them, adding

that Dr. Leggett was "not an occupational physician, but rather a specialist in infectious

diseases" who had "not tested claimant's capabilities" and who characterized his opinions as

"hypotheses."  Tr. 29.  Instead, the ALJ gave "significant weight" to the opinions of two state

agency reviewing medical doctors, Mary Ann Westfall, M.D. (Tr. 174-81), and Linda Jensen,

M.D. (Tr. 208), in assessing Morgan's RFC, finding their assessments consistent with the record

as a whole.  Tr. 28-29.

As noted above, the ALJ failed to give adequate reasons to reject the testimony of

Morgan and his mother about his daily fatigue.  Importantly, Dr. Leggett expressed no concern

that Morgan was malingering or that his fatigue would be inconsistent with his diagnoses.

Instead, Dr. Leggett opined that Morgan's fatigue precluded more than four to five hours of work

per day and would result in Morgan missing work more than two times per month even if he

---

[3] The $FEV_1/FVC$ ratio is the ratio between the amount of air which can be forcibly exhaled from the lungs in the first second of a forced exhalation and the amount of air which can be forcibly exhaled from the lungs after taking the deepest breath possible; it "tells the clinician what percentage of the total amount of air is exhaled from the lungs during the first second of forced exhalation."  *See* http://copd.about.com/od/copd/a/pfts.htm (last accessed February 25, 2009).

13 - FINDINGS AND RECOMMENDATION

performed only simple, routine and sedentary work.  Morgan's diagnoses of HIV infection and

COPD, as well as Dr. Patterson's opinion that Morgan suffers from "a lot of obstructive lung

disease," provide an objective basis for Morgan's complaint of fatigue.  Rather than providing a

basis on which to discredit their findings, the fact that Drs. Leggett and Patterson are specialists

provides a basis on which to give those opinions greater weight, even without any occupational

testing.

In sum, this court finds no convincing reason in the record for rejecting the opinions of

Morgan's treating doctors in favor of those of two state agency reviewing doctors.

## II.  Part-Time Work

The improperly discredited testimony in this case establishes that, while Morgan is

capable of working, he is not capable of working a full-time job.  In cases spanning the past

decade, the Commissioner has taken the position that "at Step Five, . . . only an ability to do full-

time work will permit the ALJ to render a decision of not disabled."  *Kelley v. Apfel*, 185 F3d

1211, 1214 (11th Cir 1999); *see also*, *Bladow v. Apfel*, 205 F3d 356, 359-60 (8th Cir 2000)

(remanding for clarification of claimant's RFC in light of *Kelley*); *Kennedy v. Astrue*, 2008 WL

453187 *7 (D Ariz Oct. 8, 2008) (citing *Bladow* and finding that improperly discredited

evidence from claimant's treating physician "indicates Kennedy cannot work full time and is

therefore disabled); *Barsotti v. Comm'r of the Soc. Security Admin.*, 2000 WL 328024 *3 n2 (D

Or March 13, 2000) (citing *Kelley* and *Bladow* and noting that "the Commissioner takes the

position that at step five of the sequential disability determination, only a claimant's ability to

perform full-time work will permit an ALJ to render a decision of 'not disabled.'").  This

analysis rests on the applicability of Social Security Ruling 96-8p, applied by the Commissioner

at step five, which provides:  "RFC is the individual's maximum remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis . . . .  A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

schedule."  Accordingly, SSR 98-6p bars part-time work from entering the equation at step five.

*Bladow*, 205 F3d at 359 n6 (citations omitted).

As discussed above, the ALJ offered no legitimate reason for rejecting the testimony by

Morgan and his mother concerning the effects of his fatigue or for discounting Dr. Leggett's

opinion that Morgan's fatigue would preclude him from working more than part-time and cause

him to miss more than two days of work per month even if he were performing a simple, routine,

and sedentary job.  When properly credited, this evidence establishes that Morgan is unable to

work full-time.  Under the Commissioner's own interpretation of SSR 96-8p, this precludes a

finding at step five that Morgan is not disabled.  Accordingly, this case should be remanded for

an award of benefits.

## RECOMMENDATION

For the reasons stated above, the Commissioner's decision should be REVERSED and

this case should be REMANDED for a determination and award of benefits pursuant to Sentence

Four of 42 USC § 405(g).

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due March 19, 2009.  If no

objections are filed, then the Findings and Recommendation will be referred to a district judge

and go under advisement on that date.

15 - FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 10 days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will be referred to a district judge and go under advisement.

DATED this 2nd day of March, 2009.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

16 - FINDINGS AND RECOMMENDATION